STATE of Missouri, ex rel., Jack HICKMAN and Irene Hickman, Respondents,

v.

The CITY COUNCIL OF KIRKSVILLE, Missouri: Elizabeth Laughlin, Jerry Thomas, Steve Hunt, Bill Clifton and Russell Roberts, Appellants.

No. WD 35865.

Missouri Court of Appeals, Western District.

March 5, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Application to Transfer Denied June 25, 1985.

Howard M. Hickman, Farr & Hickman, Kirksville, for appellants.

Wayne Fraser, McPherson & High, Kirksville, for respondents.

Before LOWENSTEIN, P.J., and NUGENT and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

The respondents, Jack and Irene Hickman, sought to purchase a building known as the "Old High School" from the Kirksville School District, but the contract was contingent upon the property being rezoned from residential to commercial. The Hickmans purposed to turn the abandoned and deteriorating building into a mall with shops and other public uses.

The appellant, the City Council of Kirksville, denied the rezoning request. The Hickmans collected 831 signatures to place the rezoning issue before the voters of Kirksville. The City Council rejected the initiative petition saying the law did not provide for initiative action under the city manager form of government, and furthermore an issue such as rezoning a tract of real estate was of an administrative nature and not proper to be voted upon by the people of the city.

When the council refused to accept or consider the petition for certification, the Hickmans then filed a petition for mandamus to force the issue on the ballot. The trial court issued the writ of mandamus and the City Council appeals.

The ultimate issue in this case is whether in Missouri the initiative procedure is available to rezone a tract of real property.

The City Council first contends that no right to an initiative exists in a third class

city such as Kirksville which operates under the city manager form of government. The city formerly had operated under the commission form. A statute passed in 1984, § 78.573 RSMo has since taken care of this problem by setting out specific guidelines for ordinances passed by initiative or referendum in city manager cities. But this case is governed the law, or lack thereof, as it existed in 1983.

The procedure for initiative applicable when this action for initiative was commenced was governed by § 78.200 for third class cities operating under the commission form of government. That statute required the petition to be signed by "voters equal in number to twenty-five percent of the votes cast for all *candidates for mayor* at the last preceding election." The city council argues that there is no method by which to compute the number of signatures since under the city manager form of government the mayor is not elected by a popular vote. Rather the council members pick one of their number to act as mayor. Section 78.440 allows all laws of a city to continue in effect when it changes from one form of organization to the city manager form, if such laws are *not inconsistent* with provisions of §§ 78.430 to .640. Thus the issue here is one of statutory construction.

■ A basic rule of construction is that the true intention of the legislature must be followed and if necessary the strict letter of the act must yield to its obvious intendment. *BCI Corp. v. Charlebois Const. Co.*, 673 S.W.2d 774, 780 (Mo. banc 1984). As stated in *State ex rel. Blackwell v. Travers*, 600 S.W.2d 110, 113 (Mo.App.1980), "[l]iberal construction of provisions which reserve to the people the power of initiative is particularly favored so as to make effective this reservation of power." Had the legislature intended to delete the right to initiative under this form of organization, it could have specifically done so. The problem then is simply the legislature's inadvertence to provide a new method of computing the requisite number of signatures. It is the responsibility of

the courts, when construing statutes, to give effect to the plain language of a statute viewed *as a whole*. *A.B. v. Frank*, 657 S.W.2d 625, 628 (Mo. banc 1983).

■ The trial court adopted the Hickman's method of computing the required signatures, and this court agrees. In its order and memorandum the trial court said:

Under Section 78.560 a person may not be elected as Mayor unless he has first been elected as a councilman by the voters. Each councilman is eligible for the office of Mayor and has the potential of being elected Mayor by the council after he has been elected councilman by the voters. In this sense all candidates for the City Council are also "candidates for mayor" since one of them will be elected Mayor whether or not he seeks the office. Therefore, the voters did vote for "candidates for Mayor" as required by Section 78.200, when they voted for candidates for the City Council. In effect the election of councilmen by the voters is a preliminary election, much like a primary election, to the election of the Mayor by the Council. The voters do vote for "candidates for Mayor" although not for "the office of Mayor".

The parties stipulated that in the city election just prior to the initiative petition 2,791 votes were cast for all candidates for city council. With 831 signatures, the petition had far more than twenty-five percent, especially considering every voter could vote for *two* candidates. The purpose behind having a certain number of signatures is to avoid frivolous or capricious issues being placed on the ballot, and that purpose has here been served. There was simply a statutory gap with no precise language defining and determining the signatures required, but the amount garnered by the Hickmans, under any reasonable method of determination, was here adequate. This court denies the council's contention that since no precise equation existed in state law governing the number of petition signatures at the time in question this defeated the right to the initiative process.

■ The city council asserts trial court error in determining the proposed ordinance constituted "legislative" action, but should have found rezoning is an "administrative" act. The city is correct in that the legislative or administrative character of the action determines the outcome.

Some cases and authority as used in this opinion involved a referendum. Although initiative generally refers to the right of the electors of a community to enact ordinances the council had the power to enact, and referendum submits to the voters whether an ordinance passed by the council shall become effective, the philosophical underpining behind the referendum applies here to the Hickman's action denominated as initiative.

It is the general rule that initiative and referendum are applicable only to ordinances which are legislative in character and not applicable to those dealing with administrative matters. *Anderson v. Smith,* 377 S.W.2d 554, 557 (Mo.App.1964); *Carson v. Oxenhandler,* 334 S.W.2d 394, 399 (Mo.App.1960). Legislative acts are said to be permanent and general and presenting a new policy or plan. *State ex rel. Whittington v. Strahm,* 374 S.W.2d 127, 130 (Mo. banc 1963); *Anderson, supra,* at 558. Those subjects temporary or special in nature or that merely pursue on existing plan are deemed administrative. *Whittington, supra,* at 130 and *Anderson, supra,* at 558.

■ Our supreme court has said in *Strandberg v. Kansas City,* 415 S.W.2d 737, 742 (Mo. banc 1967), "It is well established in Missouri that the exercise of the zoning powers delegated to cities including the enactment of ordinances amending the comprehensive plan is a legislative function." *Carson v. Oxenhandler, supra,* at 406.

*Carson* involved the applicability of referendum to an ordinance authorizing a county to enter into an agreement with a housing authority. In holding such an agreement to be legislative and subject to referendum the court noted certain zoning changes would ultimately have to be made,

and being legislative in nature the act was subject to referendum. Although the court noted some degree of chaos would be involved by the people altering or changing acts of the legislature body it noted the overriding interest of the people to be able to express an opinion should prevail. The council argues against allowing a popular vote to change zoning because it does not utilize expertise of planners and a popular vote or particular parcels will disrupt a comprehensive zoning scheme. Despite these concerns the initiative process should not be discouraged in rezoning matters unless specifically excluded by legislative authority.

In sum, the labels of "legislative" and "administrative" as determinative of whether initiative or referendum are proper in rezoning, are not always helpful. 4 C. Antieau, Local Government Law County Law, § 33.03 at 63 (1984 revised ed.) The factual situation in this case does not lend itself to being positively classified as legislative or administrative. California has noted the amendment of a general plan and rezoning are legislative, as well as the adoption of a specific plan. *Yost v. Thomas,* 36 Cal.3d 561, 205 Cal.Rptr. 801, 685 P.2d 1152, 1158 (1984). When the focus shifts to a specific tract for zoning the function becomes blurred. *Golden v. City of Overland Park,* 224 Kan. 591, 584 P.2d 130, 135 (1978). The rezoning here really has elements of both legislative and administrative action. Also vexing is the determination in *Williams v. City of Kirkwood,* 537 S.W.2d 571, 574 (Mo.App.1976), that the issuance of a special permit, which does not involve the changing of an already adopted plan, is administrative. The theory in *Williams* is a zoning change is not being made, but only the administrative discretion involved by the city to grant a special use within the confines of established zoning.

This point of the council is denied. Case authority leads to the conclusion that the action in question is "legislative" action here so as to allow initiative.

■ The City Council's final point is that the zoning enabling statutes in § 89.010 *et seq.* RSMo have preempted zoning measures from the initiative process. Some state courts have so decided, (*see* Annot., 72 A.L.R.3d 991 (1976)), but Missouri has never squarely dealt with this issue. In *State ex rel. Wahlmann v. Reim,* 445 S.W.2d 336, 339 (Mo. banc 1969), the supreme court said in dicta: "It may be that initiative altogether and referendum as to particular amendments are irreconcilable with the general zoning enabling statutes, but these questions are not before us." The court went on to hold that the *referendum* process as to a comprehensive zoning ordinance was *not* preempted.

The City Council also cite *State v. Donohue,* 368 S.W.2d 432 (Mo. banc 1963), as support for its last contention. This case dealt with an amendment to the St. Louis County comprehensive zoning ordinance by initiative petition. There the proponents of the initiative contended the requirements of notice and a hearing were complied with when the *original* amendment was enacted. The supreme court rejected this argument holding that "any purported enactment of an amendment to the comprehensive zoning ordinance ... without lawful compliance with those provisions would be unlawful and void." Nothing in the holding purports to eliminate the initiative process from zoning issues. State passage of enabling laws allowing the cities to enact comprehensive zoning within their boundaries does not exempt council actions in that area from initiative by the people.

The trial court apparently had *Donohue* in mind when it required the Hickmans to publish notice of the public hearing and make a reasonable effort to actually notify by registered mail all landowners within a 185 foot radius of the tract to be rezoned. However, in view of the United States Supreme Court case of *City of Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), the vitality of the *Donohue* case may have been sapped. The *Eastlake* court held that use of a referendum in a zoning issue is not invalid on a procedural due process theory

(*i.e.* lack of hearing and notice) because the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to a legislative body.

The *Eastlake* decision has since been followed by the Supreme Court of Florida in *Orange County Industrial Development Authority v. Florida,* 427 So.2d 174 (Fla. 1983), which held that once the referendum power is reserved certain discernible due process standards accompanying delegated powers do not apply. The Supreme Court of California came to a similar conclusion in *Associated Home Builders v. City of Livermore,* 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (1976), when it held that the notice and hearing provisions of the zoning law apply *only* to action by the city council and not to *initiative* actions. *Id.* 557 P.2d at 481.

While the trial court in the present case may have put an unnecessary burden on the Hickmans by requiring notice and hearing pursuant to the initiative process, they did not raise this issue on cross-appeal, and it is doubtful that the city council could have had standing to raise it.

This court holds rezoning is an area where the people through initiative, may, as could their elected council, change the zoning of a parcel of property.

The judgment of the trial court is affirmed. The peremptory writ of mandamus is made permanent and absolute.

All concur.