**In re the Matter of: S.A.S. by her next friend, Z.J.S., Individually, Petitioners/Appellants,**

v.

**B.P., Respondent,**

and

**T.L.N., Third–Party Respondent/Appellant.**

**No. ED 93765.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 6, 2010.

Rehearing Denied July 14, 2010.

Benicia Baker–Livorsi, The Family Law Group, LLC, St. Charles, MO, for Appellant.

Michael Gross, St. Louis, MO, David B. Goroff, Joanne Lee, Charla Y. Strong, Foley & Lardner LLP, Chicago, IL, Amici Curiae brief for The National Association of Social Workers and The National Association of Social Workers, Missouri Chapter.

Anthony E. Rothert, ACLU of Eastern Missouri, St. Louis, MO, Stephen Douglas Bonney, Kansas City, MO, John A. Knight, American Civil Liberties Union of Eastern Missouri, American Civil Liberties Union of Kansas and Western Missouri, and American Civil Liberties Union Lesbian, Gay, Bisexual, Transgender & AIDS Project, Chicago, IL, Amici Curiae brief for The American Civil Liberties Union of Eastern Missouri, The American Civil Liberties Union of Kansas and Western Missouri, and The American Civil Liberties Union Lesbian, Gay, Bisexual, Transgender & AIDS Project.

Anthony D. Linson, Court Appointed Guardian Ad Litem for S.A.S.; Lampin, Kell, Fagras, Linson: Custer & Buehler, St. Peters, MO, Amicus Curiae.

Jane Ellen Tomich, Knight & Tomich, St. Charles, MO, for Respondent.

Richard H. Sindel, Charles D. Sindel, Sindel, Sindel & Noble, P.C., Clayton, MO, for Third–Party Respondent.

## Opinion

MARY K. HOFF, Judge.

Z.J.S. appeals from the grant of summary judgment in favor of B.P. (Mother) regarding the issue of the legal parentage of S.A.S. (Child), pursuant to Section 210.834, RSMo 2000.[1] We reverse and remand because there is an insufficient record for review to entitle Mother to summary judgment as a matter of law. We find Z.J.S.'s constitutional challenge to Section 210.834 was not properly preserved for appellate review.

### Factual and Procedural Background

On February 28, 2005, Mother gave birth to Child. At the time of Child's birth, Mother was in a relationship with Z.J.S. Approximately nine months prior to the birth of Child, Mother had sexual relations with both Z.J.S. and another man, T.L.N. Mother signed an Acknowledgment of Paternity (Acknowledgment) in the hospital, which stated Z.J.S. was Child's biological father. Z.J.S. also signed this Acknowledgment.

On January 5, 2007, Z.J.S. filed a Petition for Declaration of Paternity and Order of Custody and Visitation (Petition). In his Petition, Z.J.S. alleged that neither he nor Child had submitted to DNA testing to determine whether he was in fact Child's natural father. In his Petition, Z.J.S. requested that the trial court enter an order requiring paternity blood tests to determine the existence or nonexistence of a father-child relationship between himself and Child.

On January 28, 2008, Mother filed her Cross–Petition for Declaration of Paterni-ty, Order of Support and Custody, and Pre–Petition Support (Cross–Petition), alleging that Z.J.S. was Child's biological father.

On March 11, 2008, the parties entered into a Consent Judgment and Order for DNA Testing. The parties agreed to submit to DNA testing with Asure Test, Inc., (Asure) no later than March 21, 2008. On March 5, 2008, Mother and Child appeared at Asure and provided DNA samples. On March 12, 2008, Z.J.S. appeared at Asure and provided a DNA sample. The results of the testing concluded there was zero probability that Z.J.S. was the biological father of Child.

On March 18, 2008, Mother filed pleadings with the trial court requesting leave to file her First Amended Cross–Petition for Declaration of Non–Paternity alleging that Z.J.S. was not the biological father of Child, and the trial court granted Mother leave to amend her pleadings on March 28, 2008.

On March 28, 2008, on Mother's motion, the trial court ordered the parties to submit to a second DNA test at Asure by March 31, 2008. Mother and Child went to Asure on March 28, 2008, and submitted DNA specimens for the second test. Z.J.S. refused to submit to the second DNA test, and Mother filed a Motion to Strike Pleadings Pursuant to Section 210.834.3.

On April 3, 2008, the trial court entered an order allowing Z.J.S. to depose a representative from Asure and gave Z.J.S. until May 2, 2008, to file a motion pursuant to Section 210.834.5. The trial court set the cause for bench trial on June 10, 2008. On April 16, 2008, counsel for Z.J.S. deposed Adrienne Fairbanks (Fairbanks), president of Asure. On April 29, 2008, Z.J.S. filed

---

1. Unless otherwise indicated, all further statu-tory references are to RSMo 2000.

his Motion Challenging Chain of Custody of the DNA test. On May 2, 2008, the trial court allowed Z.J.S. to withdraw his request for a second DNA test.

On May 8, 2008, DNA testing concluded that T.L.N. was the biological father of Child, with a probability of paternity of 99.99998%. On May 14, 2008, Mother filed her Rescission of Affidavit Acknowledging Paternity. On July 21, 2008, the trial court ordered T.L.N. to be joined as Third–Party Respondent. On July 25, 2008, Z.J.S. filed his Motion for Leave to File First Amended Petition and Join a Necessary and Indispensable Party as well as First Amended Petition for Declaration of Paternity, Declaration of Non–Paternity; Petition for Custody; Petition for Necessaries (First Amended Petition). In his First Amended Petition, Z.J.S. alleged that Mother "informally" raised allegations that T.L.N. was the biological father of Child, that the Acknowledgment is a legal determination that Z.J.S. is Child's father, and that it is in the best interests of Child that T.L.N. be declared not to be the father of Child.

On August 15, 2008, T.L.N. filed his Answer to Z.J.S.'s First Amended Petition stating his belief that "[Z.J.S.] has … acted as father to and bonded with [Child] since her birth, that [Child] would be exposed to potentially damaging psychological trauma should it be declared that the only father she has known all her life is not in fact her father, and that therefore, … it is in [Child's] best interest that [Z.J.S.] is and should be declared to be [Child's] legal father."

On August 22, 2008, both parties filed Motions for Summary Judgment. On September 19, 2008, and September 22, 2008, both parties filed responses to the motions for summary judgment. On October 24, 2008, the trial court held a conference call with attorneys for both parties during which Z.J.S.'s motion challenging chain of custody was taken up and argued. No record was made. The trial court sustained Z.J.S.'s motion and gave Mother additional time, until December 1, 2008, to submit additional certified documentation regarding chain of custody. On October 28, 2008, the trial court scheduled oral arguments for the parties' respective Motions for Summary Judgment for December 17, 2008.

On December 10, 2008, Mother filed her Motion for Admission of DNA Test Report into Evidence. On the same day, Mother filed her notice that she would call for hearing her Motion for Admission of DNA Test Report into Evidence on December 17, 2008. On December 17, 2008, the trial court entered its order finding that a proper chain of custody had been established as to the DNA results and admitted them into evidence. The trial court took up both parties' motions for summary judgment, arguments were presented, and the trial court then took both motions under advisement. Also, on December 17, 2008, Z.J.S. filed his Motion to Declare Mo.Rev. Stat. Section 210.834 Unconstitutional, which the trial court overruled. Again, no record was made.

On December 29, 2008, the trial court denied Z.J.S.'s Motion for Summary Judgment and sustained Mother's Motion for Summary Judgment finding there was no genuine dispute as to the facts of the case.

On January 29, 2009, Z.J.S. filed with the trial court his Notice of Appeal and Jurisdictional Statement Pursuant to Rule 81.08 with Suggestions in Support challenging the constitutionality of Section 210.834. On May 27, 2009, Z.J.S. filed his brief with the Supreme Court. On July 27, 2009, Mother filed her brief with the Supreme Court. On August 11, 2009, Z.J.S. filed his reply brief with the Supreme Court. On August 31, 2009, T.L.N.

filed his Motion for Appeal by Special Order, pursuant to Rule 81.07. On September 8, 2009, the Supreme Court granted T.L.N. leave to file a late notice of appeal. On September 11, 2009, T.L.N. filed his Notice of Appeal in the trial court. On October 2, 2009, T.L.N. filed his Notice of Appeal in the Supreme Court. In his appeal, T.L.N. alleges that the trial court erred as a matter of law in entering summary judgment in favor of Mother because the trial court failed to consider the best interests of Child and in rescinding the Acknowledgment because the record does not support a finding of mutual mistake of fact. On October 20, 2009, the Supreme Court transferred the case to this court, where jurisdiction is vested. Mo. Const. Art. V, Sec. 11. This appeal follows.

*Standard of Review*

Summary judgment is designed to permit the trial court to enter judgment, without delay, when the moving party has demonstrated, on the basis of facts about which there is no genuine dispute, a right to judgment as a matter of law. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. Our review is essentially de novo. *ITT,* 854 S.W.2d at 376. We take as true the facts set forth by affidavit or otherwise in support of the moving party's summary judgment motion unless contradicted by the non-movant's response. *Id.* The non-moving party's response must show the existence of some genuine dispute about one of the material facts necessary to the plaintiff's right to recover. *Id.* at 381. We may affirm a summary judgment under any theory that is supported by the record. *Id.* We must determine whether the moving party has demonstrated an "undisputed right to judgment as a matter of law" on the basis of the material facts about which there is no genuine dispute. *Id.* at 380.

"A 'material fact' is a fact of such significance or probative value as to control or determine the outcome of the litigation." *Premier Golf Missouri, LLC v. Staley Land Co., LLC,* 282 S.W.3d 866, 871 (Mo. App. W.D.2009) (*quoting Lewis v. Biegel,* 204 S.W.3d 354, 356 (Mo.App. W.D.2006)). "If the record contains competent evidence that two plausible, but contradictory accounts of essential facts exist, then a genuine issue of material fact remains to be resolved, because fair minded people, exercising reasonable judgment could reach different conclusions on the issue in controversy." *Id.* Thus, disputes over facts that might affect the outcome of a suit under governing law preclude the entry of summary judgment and the determination of such contradictory facts is for the finder of fact to determine. *Biegel,* 204 S.W.3d at 356.

*Constitutional Challenge to Section 210.834*

■ In his first point, Z.J.S. argues the trial court erred as a matter of law in sustaining Mother's motion for summary judgment, denying his motion for summary judgment, and denying his motion to declare Section 210.834 unconstitutional.

■ To properly preserve a constitutional issue for appellate review, the issue must be raised at the earliest opportunity and preserved at each step of the judicial process. *Sharp v. Curators of University of Missouri,* 138 S.W.3d 735, 738 (Mo.App. E.D.2003). To have properly preserved the constitutional issue, Z.J.S. should have raised it at the first opportunity, on March 18, 2008, as soon as Mother filed her Motion to Dismiss based on Section 210.834. *See Curtis v. City of Hillsboro,* 277 S.W.3d 707, 712 (Mo.App. E.D.2008). However, Z.J.S. raised the constitutional issue at the last possible moment, the day the trial

court heard oral arguments on the parties' motions for summary judgment on December 17, 2008. Because Z.J.S. failed to raise the constitutionality of Section 210.834 at the first available opportunity, he has not preserved this issue for appellate review.[2] Point I is denied.

### Chain of Custody

█ In his second point, Z.J.S. argues the trial court erred as a matter of law in interpreting Section 210.823 and Section 210.834 to require it to dismiss Z.J.S.'s case upon receipt of DNA evidence demonstrating he was not Child's biological father. Z.J.S. contends that pursuant to the validly executed Acknowledgment, there was a conclusive legal finding of parentage.

Before we can address the merits of Z.J.S.'s point, we must first consider whether Mother properly adhered to the procedural requirements of Section 210.834.

Missouri's Uniform Parentage Act details the procedure for requesting, obtaining, and admitting blood test results into evidence pursuant to Section 210.834. Section 210.834 provides in pertinent part:

1. The court may, and upon request of any party shall require the child, mother, alleged father, any presumed father who is a party to the action, and any male witness who testifies or shall testify about his sexual relations with the mother at the possible time of conception, to submit to blood tests.

\*     \*     \*

4. Whenever the court finds that the results of the blood tests show that a person presumed or alleged to be the father of the child is not the father of such child, such evidence shall be conclusive of nonpaternity and the court shall dismiss the action as to that party. . . .

5. **Certified documentation of the chain of custody of the blood or tissue specimens is competent evidence to establish such chain of custody. An expert's report shall be admitted at trial as evidence of the test results stated therein without the need for foundation testimony or other proof of authenticity or accuracy, unless a written motion containing specific factual allegations challenging the testing procedures, the chain of custody of the blood or tissue specimens, or the results has been filed and served on each party, and the motion is sustained by the court or an administrative agency not less than thirty days before the trial.** [Emphasis added.]

On August 22, 2008, Mother filed her Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment in which she alleged that "[t]he DNA testing in the present case provides uncontroverted proof that [Z.J.S.] is not the biological father of [Child]." Mother further alleged that the evidence was admissible under the procedure detailed under Section 210.834, and, therefore, based on the conclusive nature of the DNA test, Mother was entitled to judgment as a matter of law. On the same day, Z.J.S. filed his Motion for Summary Judgment as to Parentage and Suggestions in Support in which he alleged that "there were flaws in the genetic testing and procedures and is not agreeing to their admission on both legal and evidentiary grounds."

---

**2.** If Z.J.S.'s constitutional challenge had been preserved for appellate review, exclusive jurisdiction of this appeal would have been in the Missouri Supreme Court. Article V, Section 3, Mo. Const. As a result of finding that this issue was not preserved, jurisdiction is vested in this court and the point is without merit. *State v. Bowens*, 964 S.W.2d 232, 236 (Mo.App. E.D.1998).

On September 19, 2008, Z.J.S. filed his Response to Mother's Motion for Summary Judgment and Statement of Uncontroverted facts denying that any admissible testing had been performed pursuant to Section 210.834. In his response, Z.J.S. specifically alleged:

There is no admissible blood test as to paternity in that there is no evidence establishing chain of custody as to all paternity tests; there is a lack of a proper evidentiary foundation concerning the methods employed by the testing laboratory and there is insufficient evidence of those who did genetic testing and those who interpreted the results as required under Mo.Rev.Stat. Sec. 210.834.

On October 24, 2008, the trial court held a conference call, with counsel for both parties, during which Z.J.S.'s motion challenging chain of custody was taken up and argued.[3] The trial court sustained Z.J.S.'s motion and gave Mother additional time, until December 1, 2008, to submit additional certified documentation regarding chain of custody.

On December 3, 2008, Mother filed with the trial court the affidavit of Thomas M. Reid, Ph.D., (Reid) the Associate Laboratory Director of DNA Diagnostics Center, the laboratory that prepared the DNA report. Reid verified the DNA testing was in accordance with established standard laboratory procedures and guidelines. On December 10, 2008, Mother filed her Motion for Admission of DNA Test Report Into Evidence. Attached to the motion were the following relevant exhibits: the affidavit of Zachary Weber, an Asure employee who collected the DNA samples

from Mother and Child; the affidavit of Florence Wehr, an Asure employee who collected DNA samples from Z.J.S.; the affidavit of accreditations duly sworn by Fairbanks, the president of Asure[4]; and the affidavit of Mother detailing the DNA testing procedures performed on her and Child. On the same day, Mother filed her notice that she would call for hearing her Motion for Admission of DNA Test Report into Evidence on December 17, 2008.

On December 17, 2008, the trial court entered its order finding

that a proper chain of custody has been established as to the DNA [test results] and admits DNA results into evidence thereby overruling [Z.J.S.'s] motion to exclude DNA test results.... [Z.J.S.'s and Mother's] motion for summary judgment were taken up and arguments were presented and the court takes both motions under advisement.

Here, there is no transcript documenting the evidence and argument made either at the October 24, 2008, evidentiary "hearing" or at the December 17, 2008, summary judgment hearing, both of which challenged the DNA evidence and the chain of custody. Without such a record, it is impossible for this court to determine what evidence was before the trial court, and this court will not speculate on the evidentiary basis for the trial court's decision. We reverse and remand for a trial on the merits.

### Acknowledgment of Paternity

In his third point, Z.J.S. argues the trial court erred in granting Mother's motion to rescind the Acknowledgment and in granting Mother's motion for summary judg-

---

**3.** No transcript of this evidentiary "hearing" appears in the record.

**4.** As mentioned above, on April 16, 2008, the parties deposed Fairbanks. The deposition is

attached to Mother's Statement of Uncontroverted Facts in Support of Her Motion for Summary Judgment.

ment because there was a genuine dispute as to whether Mother knew that Z.J.S. was not Child's biological father.

In its judgment rescinding the Acknowledgment and entering summary judgment in favor of Mother, the trial court found that

> at the time the Affidavit was signed, the parties held a mutually mistaken belief that [Z.J.S.] was in fact the biological father of [Child] or depending on [Mother's] knowledge and intentions, the Affidavit was signed as a result of fraud. The minor child certainly has an interest in seeing that this mistake is corrected and because the uncontroverted evidence shows that there was a mistake of fact, the Acknowledgment ... signed by the parties on Feb. 28, 2005, is hereby rescinded and the Missouri Department of Health and Senior Services, Bureau of Vital Records is directed to remove the name of ... Z.J.S. as father from the birth record of [Child].

In so concluding, the trial court was relying on Section 210.823, which provides in pertinent part:

> 1. A signed acknowledgment of paternity form ... shall be considered a legal finding of paternity subject to the right of either signatory to rescind the

acknowledgment, in writing, by filing such rescission with the bureau within the earlier of:

> (1) Sixty days from the date of the last signature; or

> (2) The date of an administrative or judicial proceeding to establish a support order in which the signatory is a party. The acknowledgment may thereafter only be challenged in court on the basis of fraud, duress or **material mistake of fact** with the burden of proof upon the challenger. [Emphasis added.]

Section 210.823.1.

The phrase "material mistake of fact" is not defined in Section 210.823.[5] As discussed under Point II, however, in the absence of a record establishing that there was an accurate and properly conducted DNA test, we are unable to determine whether the trial court erred in granting Mother's motion to rescind the Acknowledgment. Point III is reversed and remanded for a trial to establish whether there was a proper chain of custody and to consider the requirements in Section 210.834.5.

## Conclusion

Z.J.S.'s constitutional challenge to Section 210.834 was not properly preserved

---

**5.** Although not determinative in this matter, recently enacted legislation provides that a DNA test excluding a person as the father is usually conclusive on the issue of paternity and constitutes a "material mistake of fact" under Section 210.823. Section 210.854, RSMo Cum.Supp.2009, provides in pertinent part

> 4. Upon a finding that the genetic test referred to herein was properly conducted, accurate, and indicates that the person subject to the child support payment order has been excluded as the child's father, the court shall, unless it makes written findings of fact and conclusions of law that it is in the best interest of the parties not to do so:

> (1) Grant relief on the petition and enter judgment setting aside the previous judg-

ment or judgements of paternity and support, or acknowledgment of paternity under section 210.823 only as to the child or children found not to be the biological child or children of the petitioner;

> (2) Extinguish any existing child support arrearage only as to the child or children found not to be the biological child or children of the petitioner; and

> (3) Order the department of health and senior services to modify the child's birth certificate accordingly.

\* \* \* \* \* \*

6. A finding under subsection 4 of this section **shall constitute a material mistake of fact under section 210.823.**

for appellate review. Due to the insufficient record, we cannot conclude that Mother was entitled to judgment as a matter of law. The trial court's grant of summary judgment is reversed on the issues of chain of custody and rescission of the Acknowledgment for trial. Given our disposition of these points, we need not address T.L.N.'s appeal. The cause is remanded for further proceedings consistent with this opinion.

GLENN A. NORTON, Presiding Judge and LAWRENCE E. MOONEY, Judge, concur.